**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**MISSISSIPPI WILDLIFE FEDERATION**                              **PLAINTIFF**

**vs.**                              **CIVIL ACTION No.: 3:20-CV-683-HTW-LGI**

**SAM POLLES; ANDY GIPSON; STEVE
HUTTON; DON BRAZIL; JACK FISHER;
FOUNDATION FOR MISSISSIPPI WILDLIFE,
FISHERIES, & PARKS; MISSISSIPPI STATE
FAIR COMMISSION EXECUTIVE DIRECTOR
ANDY GIBSON; and MISSISSIPPI DEPARTMENT
OF WILDLIFE, FISHERIES, & PARKS
EXECUTIVE DIRECTOR SAM POLLES**                              **DEFENDANTS**

## ORDER

BEFORE THIS COURT is the plaintiff's Motion for Rule 56(d) Continuance to Conduct

Qualified Immunity-Related Discovery **[Docket no. 38]**. Plaintiff, by its motion, asks this court to

allow it time to conduct limited qualified immunity discovery so that it may properly respond to

defendant Andy Gibson's Motion to Dismiss and/or for Summary Judgment Based on Qualified

Immunity **[Docket no 35]**. Defendants say that since this lawsuit does not present factual disputes,

qualified immunity discovery is inappropriate. This court has reviewed the submissions of the

parties and finds as follows.

**I.    JURISDICTION**

Federal courts are courts of limited jurisdiction. The parties have not challenged whether

this court possesses subject matter jurisdiction. This court, nevertheless, has an independent

obligation to verify it possesses subject matter jurisdiction. [1]

---

[1] Federal courts are obliged to examine the basis for the exercise of federal subject-matter jurisdiction. *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999). A federal district court may examine its subject-matter jurisdiction over a matter, *sua sponte*, at any time. *Giles v. Nylcare Health Plans, Inc*., 172 F.3d 332, 336 (5th Cir. 1999) (a court must raise the issue *sua sponte* if it discovers that it lacks subject matter jurisdiction); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2007). Under Rule 12(h)(3) of the Federal

Federal civil jurisdiction principally arises under Title 28 U.S.C. § 1332[2] and §1331[3]. The former is commonly referred to as diversity jurisdiction, while the latter is hailed as federal question jurisdiction. Plaintiff, Mississippi Wildlife Federation, filed its lawsuit in this federal forum alleging the defendants had violated federal enactments: namely Title 42 U.S.C. § 1983[4] for a violation of plaintiff's civil rights under the First Amendment[5] to the United States Constitution.

No one disputes that Title 42 U.S.C. § 1983 or the First Amendment to the United States Constitution "arise under the Constitution [or] laws […] of the United States." Accordingly, this court finds that it possesses federal question subject matter jurisdiction.

---

Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added).

*Dean v. Mozingo*, 521 F. Supp. 2d 541, 551 (S.D. Miss. 2007)(overturned on other grounds).

[2] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

    (1) citizens of different States;

    (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

    (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

    (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C.A. § 1332 (West)

[3] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C.A. § 1331 (West)

[4] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983 (West)

[5] Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I

## II.     FACTUAL BASIS

Plaintiff Mississippi Wildlife Federation (hereinafter referred to as "MWF") is a non-profit conservationist organization whose purpose is the management of the State of Mississippi's land, wildlife, coasts, and rivers. For 34 years, in early August, each year, the MWF has held a Mississippi Wildlife Extravaganza (hereinafter referred to as the "Extravaganza"), an event which usually draws thousands of participants. At the Extravaganza, the MWF partnered with various vendors and outdoor enthusiasts.

*The Yazoo Pumps Project and MWF's Stance*

On August 31, 2008, the United States Environmental Protection Agency (hereinafter referred to as "EPA") signed a Final Determination prohibiting the discharge of dredged material into wetlands and other waters of the United States in connection with the construction of the proposed Yazoo Backwater Area Pumps Project at the Steele Bayou (hereinafter referred to as the "Yazoo Pumps Project"). The Yazoo Pumps Project is a United States Army Corps of Engineers (hereinafter referred to as the "Corps") Civil Works project designed to address flooding concerns in a 630,000 acre area situated between the Mississippi River and the Yazoo River in west-central Mississippi. An ongoing debate has raged between the residents of the region and conservation groups over the Yazoo Pumps Project and its impact on the region's wetlands.

The Mississippi River Delta experienced catastrophic flooding in 2018 and 2019. After the flooding, several groups of Mississippians announced their public support to reinitiate the Yazoo Pumps Project that had been halted by the EPA in 2008. The MWF had opposed the Yazoo Pumps Project in the past, but on July 24, 2019, issued a public statement changing its stance slightly. The relevant portion of MWF's public statement reads as follows:

> MWF has opposed the backwater pumping project, as was proposed, in the past. Information about the original design and proposal of the pumps did not support

the promises that were made to find effective solution to the south delta's flooding problems. We understand that the U.S. Army Corps of Engineers has provided information to the Environmental Protection Agency (EPA) that is pertinent to the proposed pumps and we are eager to receive and review that information.

MWF believes it is time to take a comprehensive look at how the Corps of Engineers manages water levels in the entirety of the Mississippi River system, and develop sustainable and cost effective solutions that help alleviate flooding and avoid wetland losses throughout the lower Mississippi River Valley, including the Yazoo River Backwater. We are actively seeking to obtain and confirm the details of any current proposal and we will rely heavily on the science and data provided by resource professionals. We are open to pumps being part of the solution if they do not eliminate or degrade wetlands.

[Docket no. 1].

*The Extravaganza*

From 1986 to 2019, the MWF held an Extravaganza at the Mississippi State Fair Grounds (hereinafter referred to as the "State Fairgrounds") in Jackson, Mississippi. According to MWF, the customary course of dealing between MWF and the Mississippi Fair Commission (hereinafter referred to as the "Commission") had been that MWF reserved the use of the Mississippi Trade Mart (hereinafter referred to as "Trade Mart") located on the State Fairgrounds. A representative from MWF would send a request to the Commission to reserve the Trade Mart for the first weekend in August for a period of three (3) to four (4) years. The parties would prepare and execute a subsequent written agreement.

On March 27, 2019, a MWF representative and defendant Steve Hutton (hereinafter referred to as "Hutton"), then the Executive Director of the Commission, signed a formal Facilities Use Agreement, reserving the Trade Mart for the Extravaganza from August 2, 2019, through August 4, 2019. MWF says that it was customary for the parties to confirm the dates for the Extravaganza at the conclusion of the prior year's Extravaganza.

4

The Mississippi Department of Wildlife, Fisheries, & Parks (hereinafter referred to as "MDWFP") has played a major part in the Extravaganza since its inception. MDWFP provided staff members for various functions: to help set up the Extravaganza; to answer guest's questions; to sell hunting and fishing licenses; and to staff a large booth. MDWFP is headed by defendant Sam Polles (hereinafter referred to as "Polles"), as the Executive Director. He has held this position since former Governor Kirk Fordice appointed him in 1992.

Polles is also an *ex officio* member of defendant Foundation for Mississippi Wildlife, Fisheries, & Parks (hereinafter referred to as the "Foundation"). The Foundation is a 501(c)(3)[6] non-profit private organization that MDWFP formed in 2003 to financially support MDWFP.

Two other State of Mississippi agencies have typically followed Polles' lead in supporting the Extravaganza: the Mississippi Department of Marine Resources; and the Mississippi Department of Agriculture and Commerce (hereinafter referred to as "MDAC").

Polles controlled the customary issuance of the MWF's permit for a large aquarium at the Extravaganza's Fetch and Fish exhibit, a central children's attraction of the Extravaganza. Polles also allowed his staff and employees to deliver fish to the attraction.

MWF held the 2019 Extravaganza at the Mississippi Trade Mart on August 2, 2019, though August 4, 2019. Most vendors placed their deposits for booth spaces a year in advance of the

---

[6] (a) Exemption from taxation.--An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. […]

(c) List of exempt organizations.--The following organizations are referred to in subsection (a): […]

    (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

26 U.S.C.A. § 501 (West)

Extravaganza. Approximately two (2) weeks before the 2019 Extravaganza, Victoria Darden (hereinafter referred to as "Darden"), a Mississippi resident, applied for a booth at the Extravaganza. Darden initially held herself out as a photography vendor from New Orleans, Louisiana. After the Extravaganza organizers asked her to submit her vendor information; that information was deceptive. Darden, instead, sought to secure a booth for the "Finish the Pumps" (hereinafter referred to as "FTP") organization and that the FTP intended to coordinate a protest during the Extravaganza. Darden was not able to secure a booth; one was not available because she had waited so late.

The MWF, thereafter, began contacting vendors to see if any would be willing to share booth space with Darden and the FTP. Mississippi Ag Equipment Company agreed to allow Darden and the FTP to share booth space with it. Darden and the FTP peacefully attended the 2019 Extravaganza. The 2019 Extravaganza, though, allegedly received negative publicity due to MWF's public statement and Darden's attendance.

On or around July 26, 2019, about a week before the start of the 2019 Extravaganza, Polles contacted representatives of MWF and stated that the Commission wanted MWF to change its position to support unconditionally the Yazoo Pumps Project, and for MWF to distance itself from the National Wildlife Federation (which had opposed the Yazoo Pumps Project). Polles allegedly informed the MWF that if it did not comply, the MDWFP would not work with MWF in the future. MWF told Polles that it had softened its position on the Yazoo Pumps Project as evidenced by its public statement and securing a place for Darden and the FTP at the 2019 Extravaganza.

Polles and the Commission held a special teleconference meeting on July 29, 2019, approximately four (4) days before the 2019 Extravaganza. Polles posted notice of the meeting on the doors of the MDWFP office building three (3) hours before the meeting. During the meeting,

the participants decided to withdraw from participating in the Extravaganza and all future MWF events until further notice. Hours after the meeting, MDWFP announced its decision by issuing a press release. Various vendors withdrew from the 2019 Extravaganza, allegedly as a result of MDWFP's decision. Several non-governmental organizations that received funds from the MDWFP also withdrew from participating in the Extravaganza.

Defendant Andy Gipson (hereinafter referred to as "Gipson"), the Commissioner of the MDAC had planned on speaking at noon on the Saturday of the 2019 Extravaganza. The same day that MDWFP announced it would not participate in the 2019 Extravaganza, Gipson changed his plans and announced he would be speaking at the Neshoba County Fair instead.

Polles also allegedly forbade any staff or employees of MDWFP from attending or volunteering at the Extravaganza, even in plain clothes. Further, says MWF, Polles ordered the MDWFP to deny MWF's permit for the large aquarium and to not deliver any fish to the MWF.

The 2019 Extravaganza produced a profit, despite MDWFP's public withdrawal but, it was significantly reduced. Volunteers and vendors reported to MWF that non-MWF affiliates had approached them about a new 2020 event with the Commission to take over the show.

At the end of the 2019 Extravaganza, the MWF asked the Commission to place it on the Trade Mart's calendar for the annual Extravaganza reservation for 2020. The Commission placed the reservation. When MWF and the Commission were finalizing terms through a written agreement, the Commission informed the MWF that the Commission could not finalize a written contract until the ticket situation with the ticket vendor was cleared up.

*Meetings of Defendants*

On August 12, 2019, 8 days following the 2019 Extravaganza, Defendants Polles, Gipson and Don Brazil (hereinafter referred to as "Brazil") held a meeting. During that meeting, they

allegedly decided to communicate MWF's political position and affiliations, their concerns about the WMF being affiliated with the Extravaganza in the future, and that the Extravaganza should be taken over by another organization. Defendants never notified the public about the meeting, just members and staff of MDAC, the Commission, and certain private individuals.

The August 12, 2019, meeting attendees decided to terminate the lease for the 2020 Extravaganza with MWF. When they were discussing how to disburse the profits from the Extravaganza, some meeting attendees allegedly suggested that the money be split among five (5) non-profit organizations: Hope Outdoors; Super Hunt; Mississippi Ducks Unlimited; Mississippi National Wild Turkey Federation; and Delta Waterfowl. Polles allegedly adamantly refused the suggestion, allegedly saying that a percentage of the money should go to the Foundation. Polles also allegedly stated that his employees would "volunteer" to staff the event in 2020.

The meeting ended with an alleged instruction that the subject of the meeting would not be leaked to the press, or anyone else and the formation of a committee to restructure and rebrand the Extravaganza for 2020. The committee members allegedly were Gipson, Dan Robinson (hereinafter referred to as "Robinson"), Bruce Deviney (hereinafter referred to as "Deviney"), Jamie Swafford (hereinafter referred to as "Swafford"), Brazil, Chris McDonald (hereinafter referred to as "McDonald"), Hutton (who had not attended), and Polles.

On August 13, 2019, one of the show promoters who had been present at the August 12, 2019, meeting (the parties have not informed this court of that person's identity) allegedly called Gipson and expressed concern about the impropriety of the meeting. Either that same promoter or a different one (the parties again were not specific as to identity) expressed the same concern to Brazil. Brazil then allegedly informed the promoter that if they gave money to the Foundation, they would be awarded the show contract by government officials.

8

On August 16, 2019, the defendants held their next meeting at the MDAC offices. Hutton attended this meeting. Polles announced that the Foundation had secured the show. At that meeting they allegedly discussed the percentages that should go to the promoters and to the government. Hutton allegedly stated that he would not do it for less than thirty percent (30%). They also allegedly discussed whether the money should go through the Foundation. At the close of the meeting, the participants allegedly agreed that they would hold their next meeting on August 19, 2019.

The next day, on August 17, 2019, Hutton called one of the promoters (the parties again did not identify this person). Hutton supposedly told that person that they would not be able to keep the profits they sought and that they needed to decide how cheaply the promoters could put on a new show.

The August 19, 2019, meeting was cancelled one hour before it was scheduled to start. The promoters were not hired to run the 2020 event. Gipson, Polles, Hutton, and Brazil, instead, hired defendant Jack Fisher (hereinafter referred to as "Fisher") to run the 2020 event. The Foundation hired Fisher allegedly in exchange for Fisher agreeing to be complicit in the activities of his co-defendants and to take a low percentage of the profits.

On September 5, 2019, Polles directed a MDWFP captain (the parties did not specify that person's name or title) to contact MWF with the following alleged mandates: MWF must remove any mention of the Outdoorama on the Rez event because MDWFP had denied MWF's access to the Turcotte Shooting Facility; MDWFP would no longer partner with MWF on Outdoorama on the Rez; MDWFP would no longer support the 2020 Youth Squirrel Hunt or any other event on MDWFP owned and operated Wildlife Management Areas (hereinafter referred to as "WMAs"); WMF should expect a letter from MDWFP's attorney; and that MDWFP made it clear that its

August, 2019, press release meant that it would no longer have anything to do with MWF because of its stance on the Yazoo Pumps Project. Polles also instructed some state employees (MDWFP, Mississippi Museum of Natural Science, and state parks system) that they were forbidden from attending or volunteering for any further MWF events.

On September 17, 2019, Hutton and Gipson allegedly held a special meeting of the Commission. Supposedly, they adopted new policy for the rental of buildings on the State Fairgrounds that allowed the Commission to consider requests from more than one organization to rent the Trade Mart for the same dates. Gipson also presented his talking points supporting the Commission leasing the Trade Mart to the Foundation in August, 2020, instead of to MWF. A draft of Gipson's speech contained the following language:

> Earlier this year, the Mississippi Wildlife Extravaganza put on by the Mississippi Wildlife Federation became a huge disappointment to attendees and vendors alike. Their disappointment was due in large part to the organization's stated opposition to Yazoo Backwater Pumps which would protect wildlife, farmland, infrastructure, homes and businesses in the South Delta, and the realization by many that this organization was funding left-wing national interests that oppose what's best for Mississippi outdoor enthusiasts.

[Docket no. 1].

The Foundation and the Commission entered into three (3) Facilities Use Agreements for the Foundation's new wildlife show on the State Fairgrounds to be held between July 31, 2020, and August 2, 2020. The three (3) leases were for the different structures: the Kirk Fordice Equine Center; the Trade Mart; and the Coliseum. The leases were signed between September 17, 2019, and September 23, 2019. All three (3) leases contained a provision that had never before been used: "Owner Agrees not to rent said facility to any other group promoting a similar show 45 days prior to the event, or 30 days after." (hereinafter referred to as the "blackout period").

The Foundation's Board met on September 18, 2019. During that meeting, Polles and Brazil allegedly led the Board unanimously to rescind the Foundation's $45,000 donation to support the MWF's Hunter's Harvest program. The Foundation informed MWF that the decision was unanimous and that further requests for assistance from the Foundation would be fruitless because the opposition of the Foundation to the MWF's Yazoo Pumps Project position had become "very deeply political, emotional, and personal".

Around this same time, MWF allegedly began to receive calls from its Extravaganza vendors, who supposedly stated that another organization had contacted them about a bigger, better outdoor show planned for 2020.

On October 1, 2019, Hutton emailed MWF to inform it that the Fair Commission had already leased the State Fairgrounds for the first weekend of August, 2020. Hutton also informed MWF about the blackout period. Hutton attached a letter from Gipson and a copy of a press release from the Fair Commission that had been issued that same date, October 1, 2019.

The October 1, 2019, Fair Commission press release announced that the Fair Commission had signed a contract with the Foundation to host a new wildlife and agriculture event on the State Fairgrounds from July 31, 2020 to August 2, 2020.

Hutton, Fisher, and other representatives of the defendants allegedly began to contact vendors to secure their commitment to the Foundation's new outdoor expo. Allegedly, the defendants concealed from the vendors the fact that the Foundation had taken over the Extravaganza.

On December 4, 2019, the MDWFP announced that it would host the Youth Squirrel Hunts, thereby effectively taking over another of MWF's signature initiatives.

11

### III.     PROCEDURAL POSTURE

Plaintiff filed its complaint in this federal forum on October 23, 2020, asserting causes of action for: Title 42 U.S.C. § 1983 First Amendment Retaliation; Title 42 U.S.C. § 1983 Conspiracy; Mississippi state law claim of tortious interference with contract; Mississippi state law claim of tortious interference with business relations; Mississippi state law claim of civil conspiracy; and a claim for injunctive relief. Plaintiff named the following as defendants: Steve Hutton; Don Brazil; Jack Fisher; Foundation For Mississippi Wildlife, Fisheries, & Parks; Mississippi State Fair Commission Executive Director, Andy Gibson; and Mississippi Department Of Wildlife, Fisheries, & Parks Executive Director, Sam Polles.

All defendants have timely answered the complaint with the exception of  Hutton. The United States District Court Clerk for the Southern District of Mississippi entered a clerk's entry of default against Hutton on December 8, 2020.

Gipson filed on December 7, 2020, a Motion to Dismiss based upon the Eleventh Amendment[7] to the United States Constitution. Gipson also filed on January 5, 2021, a Motion to Dismiss and/or Motion for Summary Judgment based on Qualified Immunity.

MWF filed a Motion for Discovery Regarding Qualified Immunity on January 19, 2021.

Polles filed on February 22, 2021, a Motion to Dismiss based upon the Eleventh Amendment to the United States Constitution.

### IV.     ANALYSIS

Defendant Gipson's hybrid motion to dismiss and/or for summary judgment based upon qualified immunity relies upon, and intertwines with, the standards of Federal Rules of Civil

---

[7] The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S. Const. amend. XI

Procedure 12(b)(6)[8], 12(c)[9], and 56[10]. MWF argues that because Gipson supports his hybrid motion with an Affidavit, it is impractical for MWF to respond without the aid of discovery.

"While a party is entitled to file a motion seeking both Rule 12(b)(6) and summary judgment relief as alternatives, such motions are discouraged because 'hybrid motions' often fail properly to analyze the claims separately under each rule.'" *James v. Cleveland Sch. Dist.*, 2020 U.S. Dist. LEXIS 171281, *6-7 (N.D. Miss. Sept. 18, 2020)(opting to treat both motions exclusively as motions for summary judgment).

Local Rule 16(b)(3)(B) provides that the filing of a motion asserting an immunity defense stays the attorney conference and discovery; however, "[w]hether to permit discovery on issues related to the motion and whether to permit any portion of the case to proceed pending resolution of the motion are decisions committed to the discretion of the court, upon a motion by any party seeking relief." L.U. Civ. R. 16(b)(3)(B).

The United States Court of Appeals for the Fifth Circuit has consistently recognized that in addition to immunity from liability, "qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.

---

[8] (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

    (6) failure to state a claim upon which relief can be granted; […]

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12

[9] (c) Motion for Judgment on the Pleadings. After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

Fed. R. Civ. P. 12

[10] (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56

2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir.1986)). The *Backe* court emphasized that the protection from pretrial discovery is "one of the most salient benefits of qualified immunity." *Id*. For this reason, the Fifth Circuit follows "a careful procedure" with regard to discovery when a motion asserting qualified immunity has been made. *Id*. Under that procedure, this court may only defer its qualified immunity ruling "if further factual development is necessary to ascertain the availability of that defense." *Id*. Before allowing any discovery, this court, "must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Id*. (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994–95 (5th Cir.1995); and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Gipson has asserted a qualified immunity defense in the lawsuit *sub judice*. According to Gipson, the First Amendment rights that MWF says he trampled are not clearly defined under the rubric of § 1983. Further, says Gipson, even if those rights were clearly defined, his actions would not amount to a violation of MWF's First Amendment rights. Gipson's motion to dismiss and/or for summary judgment, therefore, presents this court with a mixed question of fact and law.

> Qualified immunity arguments generally fall into one of two categories: Rule 12(b)(6)-type arguments that a plaintiff has failed to allege the deprivation of a clearly-established constitutional right, or Rule 56-type arguments that a defendant's conduct was objectively reasonable in light of the circumstances. Typically, the former can be addressed without discovery, while the latter cannot."

*Watkins v. Hawley*, 2013 U.S. Dist. LEXIS 93667, at *3 (S.D. Miss. July 3, 2013). Accordingly, MWF moved under Rule 56(d)[11] for limited discovery to address Gipson's assertion that he is entitled to qualified immunity.

---

[11] (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1) defer considering the motion or deny it;
    (2) allow time to obtain affidavts or declarations or to take discovery; or
    (3) issue any other appropriate order.

United States District Court Judge Keith Starrett collected a brief summary of the jurisprudence behind Rule 56(d):

> Rule 56(d) discovery motions are broadly favored and liberally granted. *See Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citing *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). The purpose of the Rule "'is to provide non-movants with a much-needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion.'" *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009) (quoting *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 918 (5th Cir. 1992)). "Although a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course, the party seeking additional discovery must first demonstrate how that discovery will create a genuine issue of material fact". *Id.*

*Stark v. Univ. of S. Miss.*, 2013 U.S. Dist. LEXIS 145551, at *6-7 (S.D. Miss. Oct. 8, 2013).

The prevail on its claim for First Amendment retaliation in the lawsuit *sub judice*, MWF must prove: (1) it was engaged in constitutionally protected activity; (2) Gipson's actions caused MWF to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Gipson's conduct was substantially motivated by MWF's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). This standard for analysis of private citizen retaliation claims has been employed by Mississippi federal courts. *See Cash v. Lee County Sch. Dist.*, 2012 U.S. Dist. LEXIS 182850 (N.D. Miss. Dec. 28, 2012)(denying school principal's summary judgment against plaintiff parent who was arrested for public disturbance after having heated exchange with principal); *see also R.S. v. Starkville Sch. Dist.*, 2013 U.S. Dist. LEXIS 134264 (Sept. 19, 2013)(denying Rule 12(b)(6) motion and finding that First Amendment retaliation claim was properly pled when disabled student was removed from football team 12 days after parents filed complaint).

---

Fed. R. Civ. P. 56

Gipson argues that a right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir.2009). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014).

Gipson fails to account for Fifth Circuit precedent: "government retaliation against a private citizen for exercise of First Amendment rights *cannot be objectively reasonable*." *Keenan*, 290 F.3d at 258 (Emphasis added). Retaliation against a private citizen for exercising his or its First Amendment rights is a clearly established right.

MWF's allegations in its complaint outline a conspiracy by government actors which might defeat qualified immunity. This court, however, must conduct a fact-based inquiry to determine whether Gipson's actions were "objectively reasonable in the light of the circumstances". *Watkins*, 2013 U.S. Dist. LEXIS at *3. If MWF can establish, through limited qualified immunity discovery, that Gipson's actions were driven by a retaliatory animus, then, Gipson would not be entitled to qualified immunity. This court cannot, on the record before it, determine such. Accordingly, MWF's motion for qualified immunity discovery must be granted.

V.    **CONCLUSION**

**IT IS, THEREFORE, ORDERED that plaintiff's Motion for Rule 56(d) Continuance to Conduct Qualified Immunity-Related Discovery [Docket no. 38] is hereby GRANTED.**

**IT IS FURTHER ORDERED that the parties are to conduct ninety (90) days of qualified immunity related discovery as set forth below:**

16

1.  Discovery sufficient to enable this court to determine (including the depositions of Gipson, Hutton, and others, if necessary) the extent of Gipson's role with regard to the August 12, 2019, meeting held in the MDAC board room, specifically: (a) the decision to hold the August 12, 2019, meeting; (b) the decision to keep the August 12, 2019, meeting non-public; (c) the invitation of attendees to the August 12 meeting; (d) who presided over the meeting; (e) discussions held with regard to MWF's political positions and affiliations with national organizations; (f) the origin of the "new event"; (g) the nature of the business conducted during the August 12, 2019, meeting; (h) the formation of an event committee; and (i) any announcement made during the August 12, 2019, meeting regarding MWF's putative contract/reservation for use of the Trade Mart in 2020.

2.  Discovery sufficient to enable this court to determine (including the depositions of Gipson, Hutton, and others, if necessary) Gipson's role regarding: (a) the September 17, 2019, meeting of the Commission; (b) the decision to award the August 2020 contract for use of the Fairgrounds to the Foundation; (c) the drafting of the Foundation's Facilities Use Agreement and the decision to include the subject exclusivity provision; (d) the formulation of new policies for the rental of the Fairgrounds buildings; (e) the drafting of talking points presented by Gipson during the September 17, 2019, meeting; (f) Gipson's representations/comments to the Commission members or Hutton regarding MWF's political position/affiliations made during August or September of 2019; and (g) negotiations of the Facilities Use Agreement with the Foundation and/or Polles; and

3.  Discovery sufficient to develop facts regarding the contract/reservation for the 2020 Extravaganza weekend, including information held by MDAC employees.

IT IS FURTHER ORDERED that the following motions are hereby DENIED WITHOUT PREJUDICE and defendants may reassert them at the close of the limited qualified immunity discovery period, if necessary: Gibson's Motion to Dismiss [Docket no. 18]; Gibson's Motion to Dismiss and/or for Summary Judgment Based on Qualified Immunity [Docket no 35]; and Polles' Motion to Dismiss [Docket no. 48].

IT IS FINALLY ORDERED that this lawsuit *sub judice* is hereby STAYED pending the qualified immunity related discovery.

SO ORDERED this the 27th day of September, 2021.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT COURT JUDGE