**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MISSISSIPPI WILDLIFE FEDERATION**                                              **PLAINTIFF**

**VS.**                                                                    **NO. 3:20-cv-683-HTW-LGI**

**SAM POLLES; ANDY GIPSON; STEVE**
**HUTTON; DON BRAZIL; JACK FISHER;**
**FOUNDATION FOR MISSISSIPPI WILDLIFE,**
**FISHERIES, & PARKS; MISSISSIPPI STATE**
**FAIR COMMISSION EXECUTIVE DIRECTOR**
**ANDY GIPSON; AND MISSISSIPPI DEPARTMENT**
**OF WILDLIFE, FISHERIES & PARKS**
**EXECUTIVE DIRECTOR SAM POLLES**                                           **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT, MISSISSIPPI DEPARTMENT OF WILDLIFE, FISHERIES AND
PARKS EXECUTIVE DIRECTOR SAM POLLES', MOTION FOR JUDGMENT ON
THE PLEADINGS**

---

COMES NOW Plaintiff, Mississippi Wildlife Federation ("Plaintiff"), and files its

Memorandum of Authorities in Support of Plaintiff's Opposition to the Motion to for Judgment

on the Pleadings filed by Mississippi Department of Wildlife, Fisheries and Parks Executive

Director Sam Polles (R. Doc. 97), and would show unto the Court the following:

**I.      BACKGROUND**

This matter arises out of actions by Defendants, Sam Polles, individually and in his

official capacity as executive of the Mississippi Department of Wildlife, Fisheries & Parks

(hereafter, "Defendant Polles"), Andy Gipson (hereafter "Defendant Gipson"), individually and

in his official capacity as Commissioner of the Mississippi Department of Agriculture and

Commerce ("MDAC," and formerly the Mississippi State Fair Commission), Steve Hutton, Don

Brazil, Jack Fisher, and the Foundation for Mississippi Wildlife, Fisheries & Parks ("the

Foundation") (collectively, "Defendants"), in which Defendants acted in concert to retaliate against Plaintiff for its position on the Yazoo Pumps Project in violation of Plaintiff's First Amendment rights. On October 23, 2020, Plaintiff sued five (5) individual Defendants for conduct and/or conspiracy related to First Amendment retaliation, tortious interference with contract, tortious interference with business relations, and civil conspiracy. Defendant Polles, one of the individual Defendants, was also named in his official capacity as the Executive Director of the Mississippi Department of Wildlife, Fisheries & Parks, and in this capacity is being sued "for injunctive relief only." (R. Doc. 1 at 2–3.) Within the section for "Count Six – Request for Injunctive Relief," Plaintiff expressly states that this Count against Defendant "is for the purpose of enjoining the enforcement of unconstitutional actions in continued violation of the Federation's First Amendment Rights[.]" (*Id.* at 42.)

This lawsuit is centered on the defendants' taking of Plaintiff's primary source of funding, the Mississippi Wildlife Extravaganza ("Extravaganza"). (*Id.* at 4.) Since 1986, the Federation has held the Extravaganza at the same time and place every year, during the first weekend of August at the Mississippi State Fair Grounds Trade Mart in Jackson, Mississippi ("the Trade Mart"). (*Id.* at 5.) For Plaintiff's staff, having a firm date and future venue for planning and booking purposes is crucial, as outdoor and wildlife expo vendors typically operate on a show circuit, have tight travel schedules, and order inventory months in advance. (*Id.*) Each year, the vendors reserved space in their prospective year's calendars specifically for the Extravaganza August weekend at the Trade Mart. (*Id.*)

For several years, it was Plaintiff's practice to reserve the Trade Mart for the following year's Extravaganza by entering into an informal agreement, and then subsequently executing a formal Facilities Use Agreement. (*Id.* at 5–6.) This custom and practice to reserve the Trade Mart

for the following year was critical to Plaintiff's ability to plan the next Extravaganza, as the Trade Mart is the only venue in Central Mississippi that could accommodate Plaintiff's outdoor and wildlife show. (*Id.* at 5.)

Consistent with historic custom and practice, on March 27, 2019, a representative for Plaintiff and Defendant, Steve Hutton, then Executive Director of the Mississippi Fair Commission, executed a formal Facilities Use Agreement reserving the Trade Mart for the Extravaganza from August 2, 2019 through August 4, 2019. (*Id.*) The Extravaganza was held that weekend as scheduled, and at the conclusion of the 2019 Extravaganza, Plaintiff and the Fair Commission entered into its customary, informal reservation of the Trade Mart for the 2020 event. (*Id.* at 14.)

However, in the weeks that followed, Defendant Polles and his co-defendants conducted secret meetings that interfered with Plaintiff's contract for the Trade Mart for its 2020 Extravaganza and resulted in the Fair Commission backing out of its informal agreement to lease the Trade Mart to Plaintiff, and instead, awarded the lease of the Trade Mart to a competing wildlife organization based upon a sham policy and award procedure. (*Id.* at 16–17.) Most significantly, on August 12, 2019, a meeting was held in the MDAC board room. (*Id.* at 16.) This meeting was not publicly noticed or placed on any official calendar. (*Id.*) In attendance were various state officials, including Defendant Polles, Defendant Gipson, and Defendant Brazil, and other private individuals and event promoters. (*Id.*) The purpose of this meeting was to establish a competing outdoor and wildlife show to be held at the Trade Mart on the same dates the Extravaganza was to take place in 2020 and beyond and deprive Plaintiff of the opportunity to host its premiere fundraising event specifically because of the position that Plaintiff took with respect to the Yazoo Pumps Project. (*See id.* at 16–17.)

On July 29, 2019, four days before the 2019 Extravaganza, Defendant Polles and the Mississippi Commission on Wildlife, Fisheries & Parks ("the Commission") held a Special Teleconference Meeting. (*Id.* at 12.) According to the meeting minutes, it was decided that the MDWFP would withdraw from participating in the Extravaganza and all future events hosted by Plaintiff, until further notice. (*Id.*) Hours later, the MDWFP issued a press release publishing this decision. (*Id.*)

The decision to oust Plaintiff from hosting its Extravaganza at the Trade Mart was made at the August 12, 2019 meeting, and everything that followed was merely pretext. (*See* email from Chris McDonald,[1] dated August 12, 2019, attached hereto as Exhibit "A.") The supposed "guidelines" adopted by the Fair Commission on September 4, 2019 were not applied, and nothing akin to a bidding process ever occurred because it was conclusively decided on August 12, 2019 that Plaintiff would no longer be hosting its Extravaganza. The only matter that remained to be determined was the name for the new wildlife expo. (*See* Ex. A.) Defendant Polles confirmed this in his deposition. (*See* Excerpts of the Deposition of Dr. Sam Polles, attached hereto as Exhibit "B" at pp. 58–67.)  The August 12, 2019 email authored by Chris McDonald makes this abundantly clear. (*See* Ex. A) ("...thank you for taking time out of your busy schedules today to discuss the future of the Ag and Wildlife Expo (final name to be determined).").

In the contract awarding the Trade Mart to this competing wildlife organization, the Mississippi Wildlife, Fisheries & Parks Foundation, the parties included an exclusivity provision

---

[1] Chris McDonald is the MDAC's Director of Federal and Environmental Affairs. On August 12, 2019, Mr. McDonald sent an email directed to "Ag and Wildlife Partners," which stated, "Good afternoon. On behalf of Commissioner Gipson, thank you for taking time out of your busy schedules today to discuss the future of the Ag and Wildlife Expo (final name to be determined). Our next committee meeting will be Friday, August 16 (9:00 MDAC Conference Room). Topics of discussion for the meeting will include event name, organizational structure, revenue and expenses, etc. Please let me know if you need anything prior to the meeting on Friday." (Ex. A.)

that stated, "**Owner Agrees not to rent said facility to any other group promoting a similar show 45 days prior of event, or 30 days after.**" (R. Doc. 1-19 at 7 (emphasis original).) Plaintiff and the Fair Commission never included such an exclusivity provision in the thirty-four (34) years Plaintiff rented the Trade Mart. (R. Doc. 1 at 6.) These actions, taken by Defendant Polles and others, were in direct retaliation against Plaintiff for exercising its fundamental constitutional right to express and publish its stance on the Yazoo Pumps Project and its refusal to succumb to public pressure to change its stance prior to, during, and after the Extravaganza. (*Id.* at 9–10, 26–28, 30–31, 41–43.) Defendant Polles' actions have resulted in ongoing and irreparable harm to Plaintiff by depriving Plaintiff of the ability to host its premiere fundraising event, and thereby caused a significant loss in funding. (*Id.* at 30–31, 41–43.)

Plaintiff filed suit in this matter on October 23, 2020, seeking, *inter alia*, injunctive relief against Defendant Polles in his individual capacity enjoining him from utilizing his office to retaliate against Plaintiff for its exercise of its First Amendment right. (R. Doc. 1 at 41–43.) On December 7, 2020, Defendant Polles filed his Motion to Dismiss Based on the Eleventh Amendment and Memorandum in Support. (R. Docs. 48–49.) Plaintiff filed its initial Response in Opposition to Defendant Polles' Motion to Dismiss and Memorandum in Support on December 21, 2020 (R. Docs. 50–51). On January 19, Plaintiff filed a Motion for Discovery Regarding Qualified Immunity and Memorandum in Support. (R. Docs. 38–39.) On September 27, 2021, this Court issued an Order (R. Doc. 55) which, *inter alia*, granted Plaintiff's motion to conduct qualified immunity related discovery (R. Doc. 38) and denied without prejudice Defendant Polles' Motion to Dismiss (R. Doc. 48).

In the months that followed, Plaintiff propounded written discovery to Defendant Polles, Defendant Gipson, Defendant Don Brazil, and the Foundation for Mississippi Wildlife, Fisheries

& Parks and it has deposed Defendants Polles, Gipson, and Brazil. Plaintiff has also responded to all written discovery propounded to it. Qualified immunity discovery is now complete. Defendant Polles filed the instant Motion for Judgment on the Pleadings and Memorandum in Support on May 27, 2022. (R. Docs. 97–98.)

## II. STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings under Rule 12(c) are analyzed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). To withstand a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 6778, 129 S. Ct. 1937 (2009)). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)(quoting *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Higginbotham v. City of Louisville, Miss.*, 19-24, 2019 WL 4934949 at *2 (M.D. Miss. Oct. 7, 2019) (quoting *Hebert v. Abstract Co. v. Touchstone Props.*, Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (per curiam); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227–28 (5th Cir. 2008)). When faced with a Rule 12(c) motion, "the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for entitlement to relief—including factual allegations that, when assumed to be true, 'raise a right to

relief above the speculative level.'" *Moore v. Bolivar Cty.*, 15-145, 2016 WL 5478025 at *1 (N.D. Miss. Sept. 29, 2016) (quoting *Taylor v. Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015)).

### III.   LAW AND ARGUMENT

#### a.   42 U.S.C. § 1983

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State… subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…

42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" *Owens v. Pearl River Comm. College*, 2022 WL 1434651 at *4 (S.D. Miss. May 5, 2022) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To impose liability under Section 1983, the "defendant must either be personally involved in the constitutional violation or commit acts that are causally connected to the constitutional violation alleged." *Magnolia Island Plantation, LLC v. Whittington*, 29 F.4th 246, 351 (5th Cir. 2022) (quoting *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) (internal quotation marks omitted)).

#### b.   The Doctrine of Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The principles of qualified immunity shield an officer from personal liability when an officer [or state official] reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244;

*see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

To determine whether qualified immunity applies, courts engage in a two-pronged analysis that asks whether (1) the official violated a statutory or constitutional right, and, if so, whether (2) the right was "clearly established" at the time of the challenged conduct. *Ashcroft*, 563 U.S. at 736; *Pearson*, 555 U.S. at 232. State officials are not entitled to qualified immunity where the plaintiff establishes by a preponderance of the evidence that the defendant violated a clearly established constitutional right. *Jackson v. City of Hearne, Tex.*, 959 F. 3d 194, 201 (5th Cir. 2020); *McClendon v. City of Columbia*, 305 F. 3d 314, 323 (5th Cir. 2002) (en banc).

A government official's conduct violates a "clearly established" right when, at the time of the challenged conduct, "the contours of a right are sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (brackets omitted). This prong hinges on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244. "The Supreme Court has repeatedly admonished courts not to define clearly established law at a high level of generality, this does not mean that 'a case directly on point' is required. Rather, 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Miles v. Beckworth*, 455 Fed. App'x 500, 505 (5th Cir. 2011) (quoting *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (citing *Ashcroft*, 563 U.S. at 741) (emphasis in original))).

### c.      First Amendment retaliation against a private citizen

The First Amendment protects not only direct limitations on an individual's speech, but also adverse governmental action against an individual for engaging in protected free speech activity. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002) (citing *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). "Liability under Section 1983 for retaliation by the government against private citizens for their statements, and liability for retaliation by governmental employers against public employees for their statements, are subject to different analyses." *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015). Where the plaintiff is a private or ordinary citizen not employed by the government, its First Amendment retaliation claim is analyzed under the following framework:

> (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.

*Keenan*, 290 F.3d at 258. "[I]f government officials were permitted to impose serious penalties in retaliation for an individual's speech, then the government would be able to stymie or inhibit his exercise of rights in the future and thus obtain indirectly a result that it could not command directly." *Id.* (citing *Colson*, 174 F.3d at 509–10). Some retaliatory actions, even if they have the effect of chilling the plaintiff's speech, are too trivial or minor to meet the second element of this test to constitute an actionable First Amendment violation. *Id.*

The Fifth Circuit has held that "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Id.* Moreover, "the government may not place conditions on public benefits, including jobs, that penalize applicants for the speech beliefs, or association... This is true even where the person has no contractual or

property right in the benefit withheld." *Colson*, 174 F.3d at 508–09 (citing various cases that have held such conditions unconstitutional violations on citizen's exercise of free speech).

### d. Defendant Polles retaliated against Plaintiff in violation of its First Amendment right.

Relying upon Fifth Circuit precedent, this Court held in an earlier decision in this case that "'government retaliation against a private citizen for exercise of First Amendment rights *cannot be objectively reasonable.*'… Retaliation against a private citizen for exercising his or its First Amendment rights is a clearly established right." (R. Doc. 55 at 18 (quoting *Keenan*, 290 F.3d at 258 (emphasis original in this Court's decision).) In the Court's decision which granted Plaintiff's motion to conduct qualified immunity discovery after Defendant Gipson moved for partial summary judgment pursuant to the doctrine of qualified immunity, this Court found:

> MWF's allegations in its complaint outline a conspiracy by government actors which might defeat qualified immunity. This court, however, must conduct a fact-based inquiry to determine whether Gipson's [and Defendant Polles'] actions were "objectively reasonable in light of the circumstances". *Watkins*, 2013 U.S. Dist. LEXIS at *3. If MWF can establish, through limited qualified immunity discovery that Gipson's [and Defendant Polles'] actions were driven by a retaliatory animus, then, Gipson [and Defendant Polles] would not be entitled to qualified immunity.

(R. Doc. 55 at 16.) This Court has already found that Plaintiff has made a plausible claim of conspiracy by government actors in violation of Plaintiff's constitutional rights which could defeat qualified immunity if Plaintiff can demonstrate defendants' actions were driven by a retaliatory animus. The law of the case doctrine mandates that this decision should not be revisited, and it "should continue to govern the same issue in subsequent stages in the same case." *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (quoting *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir. 1999)). Thus, Defendant Polles' arguments that he did not violate Plaintiff's First Amendment right is unavailing, the key inquiry here is whether he did

10

so with the intent to retaliate against it for its position on the Yazoo Pumps Project, and Plaintiff submits that the evidence adduced in qualified immunity discovery suggests that he did.

As Plaintiff concedes in its Opposition to Defendant Polles' Motion to Dismiss, Defendant Polles is not liable for the actions or decisions of the Commission. However, he is liable for his admitted and uncontroverted participation in the August 12, 2019 meeting, when it was decided that because of Plaintiff's position on the Pumps Project, Plaintiff would be deprived of its ability to host the Extravaganza at the Trade Mart in 2020 and beyond because there would be a new wildlife expo created to take place at the Trade Mart from July 31 through August 2, 2020. (*See* notes from August 12, 2019 Meeting, attached hereto as Exhibit "C" at p. 2.) Likewise, Defendant Polles is liable for the actions he took in concert with his co-defendants to carry out the decision to exclude Plaintiff from holding the Extravaganza at the Trade Mart in 2020 and beyond. While Defendant Polles testified that he did not recall attending a meeting on August 16, 2019 (*see* Ex. B at p. 72), notes from that meeting indicate that he did attend the meeting and that the MDWFP "want[ed] this to be a group effort"; that the "money [would] go thru [sic] MDWFP Foundation"; that "MDWFP [would] sign the lease"; and "Dan + MDWFP will meet Aug. 19 to determine contract details[.]" (*See* notes from August 16, 2019 Meeting, attached hereto as Exhibit "D.") Given the foregoing, including those facts set forth in the Background section, *supra* at pp. 1–6, Plaintiff has met its burden at the Rule 12(c) stage because it has stated a claim for relief upon which relief can be granted that Defendant Polles retaliated against Plaintiff for its position on the pumps when he and others acted to deprive Plaintiff of its opportunity to host the Extravaganza at the Trade Mart in 2020 and beyond.

Defendant Polles claims that the conduct he engaged in was objectively reasonable because it was protected government speech. However,

the government does not have a free hand to regulate private speech on government property… members of the public retain strong free speech rights when they venture into public streets and parks… In order to preserve this freedom, government entities are strictly limited in their ability to regulate private speech in such "traditional public fora."… *restrictions based on viewpoint are prohibited.*

*Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) (quoting *Cornelius v. NAACP Legal Def. & Ed. Fund, Inc.*, 473 U.S. 788, 800 (1985); and citing *Carey v. Brown*, 447 U.S. 455, 463 (1980) (emphasis added)). Defendant Polles relies heavily on *Pleasant Grove City, Utah v. Summum* in support of his claim that his actions are protected by the government speech doctrine, but that case is easily distinguishable, as it deals with a city's denial of a religious group's request to erect a religious monument in a city park, notwithstanding the existence of Ten Commandments monument in the park. *See id.* at 464–65. The Supreme Court reasoned that the city's actions were constitutional because they dealt with a form of the government's speech, and not the restriction or regulation on private speech.

The instant matter is wholly distinguishable because Defendant Polles' actions, and those of his co-defendants, center around *Plaintiff's* speech. The actions Defendant Polles and others took was motivated by Plaintiff's stance on the Yazoo Pumps Project, and he and others took affirmative steps taken to ensure that Plaintiff would suffer monetarily by being deprived of the opportunity to host its Extravaganza at the Trade Mart specifically because of its public speech. Defendant Polles' unconstitutional conduct was a restriction placed on Plaintiff because of its viewpoint, and under Supreme Court precedent, such conduct is unlawful.

**e.   Defendant Polles engaged in civil conspiracy.**

   **a.   Civil conspiracy under Mississippi state law**

To establish a claim of civil conspiracy under Mississippi law, the plaintiff must establish, "(1) an agreement between two or more persons, (2) to accomplish an unlawful

purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Rex Dist. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (quoting *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013)). The elements are similar to a claim for criminal conspiracy, with the critical distinction being that "an agreement is the essence of a criminal conspiracy, while damages are the essence of a civil conspiracy." *Id.* (quoting *Bradley*, 117 So. 3d at 339) (internal quotation marks omitted). "For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement." *Jones v. Rebel Rags, LLC*, 270 So. 3d 903 (Miss. 2018) (quoting *Bradley*, 117 So. 3d at 339).

In this case, Plaintiff has successfully pleaded a claim for civil conspiracy under state law. With respect to the first element, Plaintiff asserts that Defendant Polles, along with his co-defendants, agreed to create a new wildlife expo to take place at the same dates and same location as the Extravaganza. Under the second element, while the creation of a new wildlife expo is certainly not unlawful, Plaintiff alleges Defendant Polles and others agreed to this action was specifically to retaliate against Plaintiff for its position on the pumps project in direct violation of its First Amendment rights. The creation of the wildlife expo and subsequent deprivation of Plaintiff's ability to execute its informal agreement to lease the Trade Mart satisfy the third and fourth prongs of the civil conspiracy claim. Moreover, Defendant Polles and his co-defendants knew of their wrongful conduct at the time they decided to create a new expo to the exclusion and detriment of Plaintiff. Accordingly, Plaintiff has made a valid claim for state law civil conspiracy.

**42 U.S.C. § 1983 Conspiracy**

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (citation omitted). In other words, "[a] conspiracy claim requires showings that an actual violation of § 1983 occurred and that the defendants agreed to commit an illegal act." *Smith v. Hebert*, 553 Fed. App'x 479, 484 (5th Cir. 2013)(citing Hale, 45 F.3d at 920; *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)).

Plaintiff has described in detail above how Defendant Polles conspired with his co-defendants to retaliate against Plaintiff for its position on the Pumps Project in violation of its constitutional rights under the First Amendment and in violation of state law. It has sufficiently alleged an unlawful constitutional violation in the preceding section, and it has likewise alleged that Defendant Polles and his co-defendants conspired to effect these actions. Given that all Plaintiff needs to show to establish Section 1983 conspiracy is a state law conspiracy claim and a Section 1983 violation, Plaintiff has met its burden. Construing the pleadings in the light most favorable to Plaintiff and accepting the allegations in the complaint as true, Plaintiff has stated a Section 1983 conspiracy claim and Defendant Polles' motion should necessarily be denied.

**f. Defendant Polles engaged in tortious interference with contract.**

Under Mississippi law, tortious interference with contract occurs where there is "malicious or intentional interference with a valid and enforceable contract by a third party which causes one contracting party not to be able to perform and the failure to perform results in a monetary loss for the other contracting party." *Cromwell v. Williams*, 333 So. 3d 877, 882 (Miss. Ct. App. 2022) (quoting *Courtney v. Glenn*, 782 So. 2d 162, 164–65 (Miss. Ct. App. 2000)). To succeed

on a tortious interference, a plaintiff must demonstrate (1) the defendant's actions were intentional and willful; (2) that the actions were intended to damage plaintiff in its lawful business; (3) that they were done with the unlawful purpose of causing damage and loss without just cause (which constitutes malice); and (4) the plaintiff actually sustained damages. *Id.* (quoting *Murray*, 609 So. 2d at 1268–69, and citing *Irby v. Citizens Nat'l Bank of Meridian*, 239 Miss. 64, 67 (Miss. 1960)). "The typical tortious-interference case involves actions by the defendant to induce some third party to break a contract with the plaintiff." *Rex Dist. Co.*, 271 So. 3d at 453 (Miss. 2019) (citing *Cenac*, 609 So. 2d at 1268). The "malice" element of a tortious interference claim "is a term of art, and under Mississippi law, it can be inferred from specific acts[.]" *Id.* at 454.

As discussed at length above, Defendant Polles acted in concert with others to form a new wildlife expo to take place at the same date and location as the Extravaganza, thereby depriving Plaintiff of hosting its premiere fundraising event at the Trade Mart. Defendant Polles' actions were taken with the specific intent of causing harm to Plaintiff, and actually did so because Plaintiff lost significant revenues for its organization when it was deprived of its ability to host the Extravaganza at the Trade Mart.

Plaintiff and the Fair Commission had in place an informal contract, substantiated by decades of custom and practice, to be formalized in the coming months, and if it was not for the actions of Defendant Polles and his co-defendants, that contract would have been consummated, and, presumably, Plaintiff would have continued to hold its Extravaganza at its regularly scheduled time at the Trade Mart in 2020 and beyond.[2] At this juncture, where the Court is bound to accept the allegations as true and construe the facts in the light most favorable to Plaintiff, Plaintiff has

---

[2] The fact that no events occurred in July 2020 at the Trade Mart due to the Covid-19 pandemic has no bearing upon the legal analysis herein.

stated a claim for tortious interference with contract and Defendant Polles' motion should be denied.

**g.  Defendant Polles engaged in tortious interference with business relations.**

Tortious interference with business relations differs from the cause of action for tortious interference with contract. *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 745 (citing *Cenac*, 609 So. 2d at 1268). A cause of action for tortious interference with business relations "exists where one with a malicious purpose sets about to injure the business of another, and injury does result." *Cenac*, 609 So. 2d at 1270. "The act and the accompanying motive together constitute the unlawful act." *Id.* (quoting *Memphis Steam Laundry-Cleaners, Inc. v. Lindsey*, 192 Miss. 224, 239 (Miss. 1941) (internal quotation marks omitted)). The remedy for tortious interference with business, and the plaintiff must demonstrate (1) a loss, and (2) that the defendant's conduct caused the loss. *Gulf Coast Hospice*, 273 So. 3d at 747 (quoting *Cenac*, 609 So. 2d at 1271).

In this case, Defendant Polles and his co-defendants acted to deprive Plaintiff of its ability to host the Extravaganza at the Trade Mart in 2020 and beyond. He did this by working with others to create a new wildlife expo, which involved many of the vendors who historically appeared at the Extravaganza, to be held on the exact same dates as the Extravaganza was slated to occur, at the precise location where Plaintiff held its event for more than three decades. The actions that Defendant Polles took in furtherance of this tortious interference with Plaintiff's business relations with the Fair Commission by causing the Fair Commission to back out of its informal agreement to lease the Trade Mart to Plaintiff in 2020. Although no formal contract had been executed, it had been the custom and practice of Plaintiff and the Fair Commission to enter into an informal agreement at the conclusion of the Extravaganza, and to execute the formal contract

the following year. Accordingly, one could reasonably infer that the Fair Commission would have honored its agreement with Plaintiff if not for the tortious interference with business relations committed by Defendant Polles and others.

As noted above, on a 12(c) motion for judgment on the pleadings, the Court is required to view the facts in the light most favorable to the nonmovant. Plaintiff's burden at this posture is simply to state a claim for relief upon which relief could be granted. In light of the foregoing, Plaintiff has met its burden and demonstrated a plausible claim for relief for tortious interference with business relations against Defendant Polles. Accordingly, his motion should be denied.

## IV.    CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiff, Mississippi Wildlife Federation, respectfully requests that this Court deny Defendant, MDWFP Executive Director, Sam Polles', Motion for Judgment on the Pleadings.

Respectfully submitted,

**MISSISSIPPI WILDLIFE FEDERATION, PLAINTIFF**

By: s/ *Walter C. Morrison, IV*
    Walter C. Morrison, IV, MSB No. 9653
    GAINSBURGH, BENJAMIN, DAVID,
    MEUNIER & WARSHAUER, LLC
    240 Trace Colony Park Drive, Suite. 100
    Ridgeland, Mississippi 39157
    Telephone:  (601) 933-2054
    Facsimile:  (601) 933-2050
    E-mail:  wmorrison@gainsben.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing Pleading was this day forwarded to all counsel of record by depositing a copy of same via:

☐   United States Mail  ☐   Certified Mail

☐   Facsimile  ☐   Hand Delivery

☐   Email  ☐   Overnight Mail

☒   ECF System

THIS the <u>17th</u> day of <u>June</u>, 2022.

<u>/s/ Walter C. Morrison, IV</u>

**WALTER C. MORRISON, IV**